October 3, 2007

**FILED**

OCT - 9 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Luz Elvia Bhullar
16252-097
Federal Prison Camp
5675 8th St, Camp Parks
Dublin, Ca. 94568

Case No.   C07 3937 — SBA

Honable Judge: Sandra Armstrong


I am writting in concern of my health. Doctor. Pang is the current Part-time physician in the Federal Camp. He has examined me and has diagnosed that I was in a high risk for another heart attack.

I am 43 years old and I've alread had experience a heart attack and a open heart surgery on 2004. I am currently an Insulin dependant and with pills too, as a full diabetic person. My major concern is that a little lump in growing from the inside of my left foot and is causing severe pain. I have seen the foot doctor and the results will be unknown, because my out date from the prison is on January 16,2008. Therefore, a MRI is needed and the medical process will need more than three months in order to prove such an expensive procedure.

The foot doctor guarantee me that it will not happen, this is a very serious issue and concern to my life. I am seeking professional advise and exam due to the lack of the Bureau of Prison medical staff. See Exhibit A, it's a list of the medication that I take in daily, it's the prove of my medical condition and without the proper diet foods for my diabetis is always over 200-300 high, putting me in a higher fisk for a second heart attack or for this lump in my feet with the risk of loosing my foot, due to being diabetic. See Exhibit B, is our Constitutional rights to have a full medical staff and the medical care.

Your Honor; Upon my request for the full benefit of the six months at the rehabilitaion at the CCC program will benefit my medical condition and I have brought this issue to the BOP and it has been ignored, this is unreasonable, uncaring and unprofessional. The BOP doesn't care for any Remedies request or concerns it's a flute to them and this is why we have to bring it to your attention, so that you would only know the truth. At the CCC program I am able to seek for professional outside help. I'm 43.

Thank you.

EXHIBIT A

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 09/21/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (3)Refills |
| Exp.Date 01/18/08 | TAKE ONE CAPSULE BY MOUTH EACH DAY | |
| Rx # 1176298 | FLUOXETINE 20 MG CAP | #14 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | TAKE ONE TABLET BY MOUTH EACH DAY | |
| Rx # 1174673 | FUROSEMIDE 20 MG TAB | #30 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | TAKE ONE TABLET BY MOUTH EACH DAY | |
| Rx # 1174674 | ASPIRIN, E.C. 81 MG TAB | #30 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG 0600 |
| | 16252-097 | (6)Refills 1930 |
| Exp.Date 11/20/07 | (PILL-LINE) INJECT 14 UNITS EACH MORNING & 10 UNITS EACH EVENING | |
| Rx # 1174675 | INSULIN NPH (10 ML) 100 UNITS/ML INJ | #30 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | TAKE ONE TABLET BY MOUTH TWICE DAILY BEFORE MEALS | |
| Rx # 1174676 | GEMFIBROZIL 600 MG TAB | #60 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | TAKE TWO TABLETS BY MOUTH TWICE DAILY | |
| Rx # 1174677 | GLYBURIDE 5MG TAB | #120 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | TAKE ONE TABLET BY MOUTH EACH DAY | |
| Rx # 1174678 | LISINOPRIL 10MG TAB | #30 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG |
| | 16252-097 | (2)Refills |
| Exp.Date 11/20/07 | T1TPO EACH DAY | |
| Rx # 1174679 | POTASSIUM CL ER 10 MEQ TAB | #30 |

| Ord.Date | Patient | Prescriber |
|---|---|---|
| 08/23/07 | BHULLAR, LUZ ELVIA | M. PANG 0600 |
| | 16252-097 | (2)Refills 1930 |
| Exp.Date 11/20/07 | (PILL-LINE) SLIDING SCALE TWICE DAILY PER PROTOCOL AS NEEDED | |
| Rx # 1174680 | INSULIN REG (10 ML) 100 UNITS/ML INJ | #10 |

(These pills are for)

1. diabetic
2. high blood pressure
3. water pills
4. heart pills
5. prozac from psyc Dr.
6. insulin NPH
7. insulin Regular
8. high cholestrol
9. diabetic pills glyburide
10. potassium pills

specific programs, the state's statutory and constitutional requirement of rehabilitation programs. Judge David Bazelon, the author of several right-to-treatment decisions from the Federal Circuit Court of Appeals for the District of Columbia, has written that:

> The rationale for the right to treatment is clear. If society confines a man for the benevolent purpose of helping him . . . then its right to so withhold his freedom depends entirely upon whether help is in fact provided. . . . When the legislature justifies confinement by a promise of treatment, it thereby commits the community to provide the resources necessary to fulfill the promise.[40]

### § 10.2.3 Administrative Review

In a case addressing the involuntary medication of inmates with antipsychotic drugs, the Supreme Court held that a state may conclude, with good reason, that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers.[41] The Court observed that an inmate has a protected liberty interest in being free from the arbitrary administration of antipsychotic drugs through the state's policy and the Fourteenth Amendment's due process clause. However, the Court applied the test of *Turner v. Safley*,[42] and found that a state's interest in prison safety and security is sufficiently great to justify subordinating the inmate's liberty interest in the proper case. Justice Kennedy, writing for the majority, commented that the Turner test applies to all circumstances in which the needs of prison administration implicate constitutional rights.

An administrative hearing was held for inmates who refused to be treated with the medication. The panel was comprised of a psychiatrist, a psychologist, and the associate superintendent of the special unit. The Washington state prison system had a special unit in which felons with severe mental disorders were housed. None of the panel members was involved in the prisoner's treatment or diagnosis at the time of the hearing, in order to assure independence. Among many other procedures, the inmate had the right to attend, present evidence, cross-examine witnesses, and be assisted by a lay advisor. Further, a decision to medicate involuntarily was subject to periodic review. As with most administrative hearings, the inmate was not afforded a right to counsel, and adherence to evidentiary rules was not required.

### § 10.3 Right to Medical Aid

Inmates in state and federal institutions have sought redress in the federal court system for medical treatment they have received and failed to receive. Complaints about medical treatment have included claims about the

adequacy and nature of the medical care received, allegations of a total denial of medical care, improper medical care, inadequate care, and conduct of prison officials attendant to the medical care.

The power of the federal courts to adjudicate an inmate's complaint about medical treatment requires that a federal right be involved in the medical treatment.[43] The inmate must allege the presence of a federally protected right. Several federally protected rights have been named by the federal courts in medical treatment cases:

1. Right to due process of law under the Fifth or Fourteenth Amendments.[44] The due process right has been couched in terms of the inmate's right to be free from an abuse of discretion on the part of prison administrators;[45] protection from unconstitutional administrative action;[46] protection of an inmate's life and health from administrative action.[47]

2. Right to be free from the infliction of cruel and unusual punishments as guaranteed by the Eighth Amendment.[48] Violation of Eighth Amendment rights has been found when there is an intentional denial of needed medical care, or when a prison official's conduct indicates deliberate indifference to the medical needs of inmates.

Despite the willingness of federal courts to hear cases that involve the federally protected rights of inmates to medical aid, there are limits to what inmates can expect to accomplish through the courts. In *Priest v. Cupp*,[49] the court explained that neither federal nor state constitutional prohibitions of cruel and unusual punishment guarantee any inmate that he or she will be free from or cured of all real or imagined medical disabilities while he or she is in custody. What is required is that the inmate be afforded such medical care, in the form of diagnosis and treatment, as is reasonably available under the circumstances of his or her confinement and medical condition.

Just as prison officials cannot deny all medical aid, inmates cannot expect a flawless medical services system. Consequently, litigation involving the medical rights of inmates has now focused upon the nature of so-called adequate or reasonable medical care.

What amount of medical aid is adequate depends largely upon the facts of each case. In *Gates v. Collier*,[50] the Fifth Circuit Court of Appeals reviewed the medical treatment that was available at the Mississippi State Penitentiary. With more than 1,800 inmates, the prison administration relied upon one full-time physician, several inmate assistants, and a substandard hospital to provide medical care. The court ruled that the services and facilities were inadequate and ordered the prison administration to: (1) employ such additional medical personnel as necessary so that the prison's medical staff would consist of at least three full-time physicians, one of which must be a psychiatrist and another the prison's chief medical officer,[51] two full-time dentists, two full-time trained physicians' assistants, six full-time registered or licensed practical nurses, one medical records librar-