SCOTT N. SCHOOLS (SCSBN 9990)
United States Attorney

JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
Assistant United States Attorney

DENNIS M. WONG (CSBN 173951)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (925)803-4760
    FAX: (415) 436-6748
    Email: dwong@bop.gov

Attorneys for Federal Respondent

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| LUZ ELVIA BHULLAR, | ) | No. C 07-3937-SBA |
| | ) | E-FILING CASE |
| Petitioner, | ) | |
| | ) | ANSWER AND OPPOSITION TO |
| v. | ) | PETITION FOR WRIT OF HABEAS |
| | ) | CORPUS |
| SCHELIA A. CLARK, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I. INTRODUCTION & SUMMARY OF ARGUMENT

    Through a petition for writ of habeas corpus ("Petition"), petitioner Luz Elvia Bhullar ("Petitioner") seeks to invalidate 28 C.F.R. § 570.21(a), which limits placement of Bureau of Prisons ("BOP") inmates to community confinement to 10% of the inmate's sentence, not to exceed six months.[1] Section 570.21(a) will be referred hereinafter as the "10% Regulation." In other words, Petitioner requests consideration for community confinement in a Residential

---

    [1] 28 C.F.R. § 570.21(a) states: "[t]he Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months."

1    Reentry Center[2] ("RRC") for more than 10% of her sentence, up to the maximum of six months.[3]

2          Respondent opposes this petition for writ of habeas corpus for the following reasons: 1)

3    this petition should be dismissed because Petitioner failed to exhaust administrative remedies,

4    which is a prerequisite to bringing suit; s*ee Porter v. Nussle*, 122 S.Ct. 983, 992 (2002);

5    *Woodford v. Ngo*, 126 S.Ct. 2378 (2006);  2) this petition should be denied as Petitioner is not

6    eligible for RRC placement as she is not within the last 10% of her sentence pursuant to 18

7    U.S.C. § 3624(c); and 3) as the 10% Regulation is a reasonable interpretation of § 3624(c) and

8    should be afforded deference.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,

9    467 U.S. 837, 844 (1984).  Furthermore, the 10% Regulation does not conflict with § 3621(b).

## II.    FACTS

### A.    Pertinent Background Information On Petitioner

          On September 28, 2006, Petitioner was sentenced to 30 months of imprisonment for

violation of 18 U.S.C. §§ 1427 & 1028A(a)(1), sale of citizenship papers and aggravated identity

theft, and for violation of 42 U.S.C. § 408(a)(7)(C), sale of social security card.  *See Exhibit 1* to

Beakey Declaration, Judgment from *U.S. v. Luz Elvia Bhullar*.   Petitioner was eventually

designated to the Federal Prison Camp ("FPC") at Dublin, California, on November 9, 2006, to

serve her sentence, where she is currently incarcerated.   *See Exhibit 2* to Beakey Declaration,

Public Information Inmate Data printout for Petitioner.  Petitioner's Pre-Release Preparation

date, which equates to her 10% date, is January 16, 2008.  *Id.* at 2.  Petitioner's projected release

date is April 3, 2008.  *Id.*

          On August 22, 2007, FPC Dublin staff set goals for Petitioner to complete a Release

Preparation Participation class related to personal growth and development by November of

2007, and to complete vocational training by April of 2008.  *See Exhibit 3 to* Beakey Declaration,

---

          [2] RRCs were formerly called community corrections centers, and are more commonly
known as halfway houses.  *See Declaration of Kim Beakey* ("Beakey Declaration") filed in
support of this Answer.

          [3] The date and point where an inmate reaches the last 10% of her sentence will be referred
to as the "10% date."

1  Program Review Report.   At that time, Petitioner's unit team at FPC Dublin recommended a

2  RRC placement date of January 16, 2008, the same as her 10% date.  *Id.*

3         **B.**     **Petitioner's Administrative Remedies**

4         On August 10, 2007, Petitioner filed an administrative remedy request at FPC Dublin

5  regarding the matter at issue in this lawsuit.  *See Exhibit 3 to Declaration of Cecilia Burks*

6  ("Burks Declaration") filed in support of this Answer.  On August 23, 2007, Petitioner's request

7  for administrative remedy was denied by the Warden. *Id.*  However, Petitioner has failed to file

8  an appeal with the BOP's regional and central offices.  *See* Burks Declaration at 3.  As a result,

9  Petitioner has not exhausted her available administrative remedies.  *Id.*

10        **C.**     **Background On 28 C.F.R. § 570.21(a)**

11        Decisions about where federal prisoners should be housed are entrusted to the BOP.  18

12 U.S.C. §3621(b):

13           The Bureau may designate [prisoners to] any available penal or correctional
          facility that meets minimum standards of health and habitability.

14 *Id.*  Whether a facility is appropriate or suitable depends on five criteria.[4]  *Id.*

15        Section 3624(c) states that:

16           The Bureau of Prisons shall to the extent practicable, assure that a prisoner
          serving a term of imprisonment spends a reasonable part, not to exceed six

17           months, of the last 10 per centum of the term to be served under conditions that
          will afford the prisoner a reasonable opportunity to adjust to and prepare for the

18           prisoner's re-entry into the community.

19        Before December 13, 2002, the BOP would sometimes exercise its discretion to allow

20 prisoners to serve all or part of the imprisonment part of their sentence in an RRC.  *Woodall v.*

21 *Federal Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005).  After December 13, 2002, the

22 BOP changed its practice and largely limited RRC placements for prisoners to the final 10% of

23 their sentences or six months, whichever was shorter.  *Id.*  However, the First and Eighth Circuits

24 held that the BOP policy change was unlawful because the plain language of §3621(b) gave the

25 BOP discretion to transfer an inmate to an RRC at any time.  *See Elwood v. Jeter*, 386 F.3d 842

26 _____

27      [4] 1. resources of the facility; 2.nature and circumstances of the offense; 3. history and
characteristics of the prisoner; 4. statements by the sentencing court; 5. pertinent policy

28 statements issued by the Sentencing Commission.  *See*18 U.S.C. § 3621(b)(1) - (5).

(8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004).

Thereafter, the BOP implemented new regulations as an exercise of their discretion under § 3621(b). Specifically, on August 18, 2004, the BOP proposed new regulations "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." 69 Fed. Reg. 51, 213 (Aug. 18, 2004). The 2005 regulations limited RRC placement to the lesser of 10% of a prisoner's total sentence or six months, unless special statutory circumstances apply. *See* 28 C.F.R. §§ 570.20, 570.21. The final rules were published on January 10, 2005, and became effective on February 14, 2005. *Id.*

## III. THIS HABEAS PETITION SHOULD BE DISMISSED BECAUSE PETITIONER FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal Law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added) 42 U.S.C. § 1997e(a).[5]   The Supreme Court explained the purpose behind the PLRA's exhaustion requirement:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. (Citation omitted).   In other instances, the internal review might "filter out some frivolous claims." (Citation

_____

[5] The PLRA exhaustion statute includes habeas petitions. *See Porter v. Nussle*, 122 S.Ct. at 992 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life. . . ."). *See also id.* at 989 (". . . when the relevant section is read in its entirety, it suggests that Congress intended to authorize the nonconsensual reference of all prisoner petitions to a magistrate." *Ibid.* "The Federal Magistrates Act, we noted, covers actions of two kinds: challenges to 'conditions of confinement'; and 'applications for habeas corpus relief.' (citations omitted) Congress, we concluded, 'intended to include in their entirety th[ose] two primary categories of suits brought by prisoners.'"). Although *Porter* distinguished between habeas petitions that challenged "the fact or duration of confinement itself; and (2) those challenging the conditions of confinement," (*id.*) placement into a RRC has nothing to do with the fact or duration of an inmate's confinement as the inmate's release date is unaffected. *See* Beakey Declaration at 2. Instead, moving an inmate to a RRC is akin to transferring an inmate from one BOP location to another. *Id.*

1

> omitted).  And for cases ultimately brought to court, adjudication could be
> facilitated by an administrative record that clarifies the contours of the
> controversy.

2

*Porter*, 122 S.Ct. at 988.

3

4    Accordingly, there are broad-reaching reasons why exhaustion is required before filing a

5 lawsuit challenging prison conditions.   As Petitioner's habeas petition challenges the place

6 where she will serve her sentence, i.e., community confinement versus a BOP facility, the PLRA

7 applies.  *See* Porter, 122 S.Ct. at 992; *Jones v. Bock*, 127 S.Ct. 910, 924-925 (2007).  Although

8 many courts, including those in this District, have considered the exhaustion argument as a

9 judicial requirement rather than a statutory one (*see Cristoval v. Clark*, 2007 WL 2746742 (N.D.

10 Cal.); *Reyna v. Copenhager*[sic], 2007 WL 2504893 (N.D. Cal.); *Felty v. Clark*, 2007 WL

11 2438337 (N.D. Cal.), at least one court has framed the issue properly: "As exhaustion is required

12 under [case law], the Court need not address [the Government's] argument that exhaustion is also

13 required under the Prisoner Litigation Reform Act *because the petition challenges petitioner's

14 'prisoner conditions.*'" (Emphasis added.)  *Zavala v. Clark*, 2007 WL 2705216 (N.D. Cal.), at

15 *1.[6]   As challenging the BOP's determination of where an inmate shall serve his or her sentence

16 clearly is a lawsuit challenging one's prison conditions, the PLRA controls and exhaustion is

17 mandatory. *See Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to

18 the discretion of the district court, but is mandatory.")   Therefore, as Petitioner has only filed one

19 administrative remedy at the institution level regarding the BOP's 10% regulation, and has yet to

20 file at the regional and Central Office levels, she has not yet exhausted her available

21 administrative remedies, and this habeas petition should be dismissed.

22

23    [6] In these Northern District of California cases, the dismissal orders noted the pre-PLRA
"futility" exception is inapplicable and cited decisions in the Eastern District of California, *e.g.,*
24 *Whistler v. Wrigley*, 2007 WL 1655787 at *3.  Actions taken in response to voluminous litigation
filed other Districts where the resident Judges had already ruled on the relevant legal issues, is
25 not necessarily apposite to cases filed in this District.  The United States has appealed an adverse
ruling regarding RRC placement from the Eastern District of California to the Ninth Circuit.
26 *See Jose Rodriguez v. Smith*, 9th Cir. Case No. 07-16014, and the BOP continues to apply the
regulations except where it appears that due to prior rulings and time constraints, to do so would
27 not be in the public interest due to the waste of judicial and governmental resources.

28

1

2

**IV.  PETITIONER  IS INELIGIBLE FOR RRC PLACEMENT UNDER THE 10% REGULATION AS SHE IS NOT YET WITHIN THE LAST 10% OF HER SENTENCE**

3

Pursuant to 18 U.S.C. § 3624(c) and 28 C.F.R. § 570.21(a), Petitioner is serving a 30

4

month sentence, and is therefore ineligible for RRC placement until she is within the last 10% of

5

her sentence, which would not be until January 16, 2008.  *See Exhibit 2 at 2* to Beakey

6

Declaration.  As a result, Petitioner is currently not yet eligible for community confinement.  *Id.*

7

This is entirely consistent with Petitioner's conviction and sentence of 30 months of

8

imprisonment where the BOP has the discretion under 18 U.S.C. § 3621(b) to place an inmate

9

accordingly.

10

**V. THE 10% REGULATION IS A VALID EXERCISE OF THE BOP'S RULE-MAKING AUTHORITY AND IS ENTITLED TO *CHEVRON* DEFERENCE**

11

**A.      Standard For *Chevron* Deference**

12

An agency's interpretation of a statute it is entrusted to administer is entitled to deference.

13

*See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984);

14

*accord Smiley v. Citibank*, 517 U.S. 735, 739 (1996).  Agencies are accorded deference under

15

*Chevron* because of a presumption that "Congress, when it left ambiguity in a statute meant for

16

implementation by an agency understood . . . the ambiguity would be resolved, first and foremost

17

by the agency."  517 U.S. 735, 741.  A second presumption underlying an agency's entitlement to

18

deference is that Congress "desired the agency (rather than the courts) to possess whatever degree

19

of discretion the ambiguity allows."  *Id.*

20

In reviewing an agency's construction of a statute, courts apply the test set forth in

21

*Chevron*.  This test has two steps.  A court must first determine whether Congress has directly

22

spoken to the precise question at issue.  *Id.* at 842.  "If the intent of Congress is clear, that is the

23

end of the matter; for the court, as well as the agency, must give effect to the unambiguously

24

expressed intent of Congress."  *Id.* at 843.  If the statutory language is silent or ambiguous,

25

deference is then to be afforded the agency's interpretation if it is based on a "permissible"

26

construction of the statute.  *Id.*

27

It does not require that an agency's construction be the only possible interpretation, just

28

1  that it be a reasonable one.  *Chem. Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470

2  U.S. 116, 125 (1985).  If this threshold is met, a court must defer to and enforce the agency's

3  interpretation, even if it is not the one the court would have chosen.  *Fernandez v. Brock*, 840

4  F.2d 622, 631 (9th Cir. 1988).  An agency's revised interpretation of a statute is entitled to

5  deference, even if it departs, as the BOP did here, from a prior reading.  *Id.* at 863.  Agency

6  interpretation is not "instantly carved in stone" and in order to complete its responsibilities

7  effectively, an agency must "engage in informed rulemaking, must consider varying

interpretations and the wisdom of its policy on a continuing basis."  *Id.* at 863-864.

8  **B.   The 10% Regulation Is Valid As It Represents The Most Reasonable
Interpretation Of Sections 3621(b) And 3624(c) And Should Be Afforded
9    *Chevron* Deference**

10       Section 570.21 of the BOP regulations interprets 18 U.S.C. §3624(c).  That section states

11  that the BOP "shall, to the extent practicable, assure that a prisoner spends a reasonable part, not

12  to exceed six months, of the last 10 per centum of the term to be served under conditions that

13  will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's

14  re-entry into the community."  Since the BOP has determined that RRC placements are the

15  vehicle for achieving this goal, this language states unambiguously that prisoners have no right to

16  be considered for an RRC placement until they have finished 90% of their sentence.  Seen from

17  this point of view, the BOP's decision in the regulations to impose exactly this limitation is not

18  only a reasonable interpretation of the statute, but the only reasonable  interpretation.

19       The difference between the two sections is highlighted by the fact that §3621(b) is

20  discretionary ("the Bureau may designate") while §3624(c) is mandatory ("the Bureau shall

21  assure . . . a reasonable time not to exceed six months, of the last 10 per centum").  Section

22  3624(c) specifically states that a prisoner should not spend more than the lesser of 10% of his

23  sentence or six months in a facility where he can re-enter the community.  This is precisely what

24  RRCs are for.  Allowing a discretionary provision like §3621 to override this mandatory duty

25  runs contrary to the common sense of these two provisions.

26       The legislative history of §3621(b) also supports the construction that this section is

27  limited to the question of which facilities are suitable and does not mandate that prisoners are to

28

*always* be considered for placement in them.  The Senate Report states that the "Committee, by listing factors for the [BOP] to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the [BOP] in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of [BOP], but intends simply to set forth the appropriate factors that the [BOP] should consider in making the designations."  S.Rep. No. 98-225, 98th Cong., 2d Sess. 142, reprinted in 1984 U.S. Code Cong. & Admin. News, 3182, 3325, quoted in *Cohen v. United States*, 151 F.3d 1338, 1343-1344 (11th Cir. 1998).  The BOP stated in the notice of its proposed rulemaking that it "carefully considered all of the statutorily-specified factors" in deciding to limit inmates' confinement in RRC's to the last ten percent of their sentences.  *See* Community Confinement, Proposed Rule, 69 Fed. Reg. at 51, 214 (August 18, 2004).  The February 2005 rules also make it clear the BOP continues to consider §3621(b)'s non-exhaustive list of factors when making placement decisions.  70 Fed. Reg. at 1660.  ("The Bureau will continue to evaluate these factors [§ 3621(b) factors] when making individual designations to appropriate facilities, and this rule will not adversely affect such individualized determinations").  Therefore, although the February 2005 rules limit the group of individuals whom the BOP will consider for RRC placement, the §3621(b) factors will be considered *when* that BOP chooses to consider them for RRC placement.

## C.    The 10% Regulation Is A Permissible Exercise of Agency Discretion To Categorically Limit The Class Of Inmates Eligible For RRC

28 C.F.R. § 570.20 states that § 570.21 provides the BOP with the "categorical exercise of discretion for designating inmates to community confinement."  Therefore, the 10% Regulation is categorical in that it limits the class of prisoners who are eligible for RRC placement based on the amount of time they have left to serve, and not on other factors individual to a particular prisoner.  In other words, the BOP does not consider the §3621(b) factors until an inmate is close to the time when he is within 10% of his sentence.  Only then does the BOP determine if a RRC facility is appropriate and available for him or her.  *See* 28 C.F.R. §570.20-21.  The BOP's ability to exercise its discretion in such a categorical manner is

1
2
3
4
5
6
7

supported by the Supreme Court which held that an agency may categorically exercise the discretion Congress has granted it by statute. *See Lopez v. Davis*, 531 U.S. 230, 233-234 (2001). Just as *Lopez* affirmed the BOP's use of §3621(e)(2)(B) to exercise its broad discretion to determine which individuals are candidates for early release, so too §3621(b) gives the BOP broad discretion in deciding where to designate inmates. In short, the BOP's decision to restrict RRC placements to prisoners serving the last 10% of their sentences is a categorical expression of the BOP's discretion that does not differ fundamentally from the BOP's exercise of the same discretion under §3621(e)(2)(B).

8
9

### D.     As RRCs Are Not A Place Of Imprisonment, 18 U.S.C. § 3621(b) Does Not Apply To RRCs And Cannot Invalidate The BOP's 10% Regulation

10
11
12
13
14
15
16
17
18
19

Although there are a number of courts that have used 18 U.S.C. § 3621(b) to invalidate the BOP's 10% regulation, a recent Ninth Circuit decision strongly indicates those decisions were erroneous.[7] In *United States v. Sullivan*, 2007 WL 2811079, at *2 (9th Cir. 2007), the Court of Appeals recently agreed with the Department of Justice's Office of Legal Counsel's interpretation that community confinement did not equate to "imprisonment." They reasoned that "[f]ederal law, in various contexts, classifies detention in facilities like a Pre-Release Center as different from imprisonment." *Id.* Citing *United States v. Latimer,* 991, F.2d 1509 (9th Cir. 1993), the *Sullivan* Court explained "that based on the plain language and structure of the United States Sentencing Guidelines, community confinement is not incarceration or imprisonment." *Id.* As § 3621(b)'s opening provision states that "[t]he Bureau of Prisons shall designate the place of

20
21
22
23
24
25
26
27

---

[7] Although they are not binding on courts in this Circuit, some other circuits have found the BOP regulations invalid in light of the language of §3621(b). *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005). Respondent believes that these opinions address the wrong issue since they focus on § 3621 and ignore § 3624. Section 3624 addresses the issue of when a defendant can be placed in an RRC. Section 3621 lists the factors that determine where the BOP should place an inmate for imprisonment. The factors listed in §3621(b) come into play only when something triggers a placement decision and a suitable facility must be found. Section 3621(b) says nothing about *when* a prisoner's placement should be considered. Section 3624(c) on the other hand expressly limits the BOP's ability to place a prisoner in pre-release status to the last 10% of his sentence.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the prisoner's *imprisonment,*" (emphasis added) § 3621(b) is arguably inapplicable to RRC

placement decisions.  Therefore, it is not mandated that the BOP consider § 3621(b)'s five listed

criteria for RRC placements, and the adverse cases in other Circuits is even less than persuasive

in light of *Sullivan*.[8]

## VI.  CONCLUSION

Based on the foregoing, Respondent opposes this petition for writ of habeas corpus and

requests that 1) this matter be dismissed for failure to exhaust administrative remedies, which is a

prerequisite under the PLRA, or in the alternative, 2) an order denying this petition as Petitioner

is currently ineligible for RRC placement under the 10% Regulation, and 3) as the 10%

Regulation is valid as it is a reasonable interpretation of § 3624(c), and therefore, entitled to

*Chevron* deference.    Moreover, the 10% Regulation is a proper categorical exercise of agency

discretion.   Finally, the 10% Regulation does not conflict with § 3621(b) as § 3621(b) pertains to

designating places of imprisonment, which does not include RRCs.


Dated: October 18, 2007                              Respectfully submitted,

                                                     SCOTT N. SCHOOLS
                                                     United States Attorney


                                            By:      ____/s/_____
                                                     Dennis M. Wong
                                                     Special Assistant U.S. Attorney


---

   [8]  Respondent notes that this issue is currently on appeal before the Ninth Circuit *(Jose Rodriguez v. Smith*, Case No. 07-16014), before the First Circuit (*Muniz and Gonzalez v. Winn*, Case Nos. 06-2692/2693), and before the Sixth Circuit (*Marshek v. Eichenlaub*, Case No. 07-1246).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the U.S. Department of Justice, and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she is causing a copy of the following:

**ANSWER AND OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS AND DECLARATIONS OF KIM BEAKEY AND CECILIA BURKS**

to be served this date upon the party in this action by placing a true copy thereof in a sealed envelope, and served as follows:

__X__          **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

_____          **PERSONAL SERVICE (BY MESSENGER)**

_____          **FACSIMILE (FAX)**  Telephone No.:

to the parties addressed as follows:

Luz Elvia Bhullar, Reg. No. 16252-097 (*pro se*)
FCI Dublin
Federal Correctional Institution
5701 8th Street - Camp Parks
Dublin, CA 94568

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18 day of October, 2007, at Dublin, California.

_____
Maria Syed, Paralegal

Respondent's Answer & Opposition
*Bhullar v. Clark*, C-07-3937-SBA