1  SCOTT N. SCHOOLS (SCSBN 9990)
   United States Attorney

2
   JOANN M. SWANSON (CSBN 88143)
3  Chief, Civil Division
   Assistant United States Attorney

4
   DENNIS M. WONG (CSBN 173951)
5  Special Assistant United States Attorney

6     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
7     Telephone: (925)803-4760
      FAX: (415) 436-6748
8     Email: dwong@bop.gov

9  Attorneys for Federal Respondent

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13
   LUZ ELVIA BHULLAR,                    )   No. C-07-3937-SBA
14                                        )   E-FILING CASE
            Petitioner,                   )
15                                        )   DECLARATION OF CECILIA BURKS
        v.                                )
16                                        )
   SCHELIA A. CLARK, Warden,              )
17                                        )
            Respondent.                   )
18  _____  )

19

20

21

22

23

24

25

26

27

28
   Declaration of Cecilia Burks
   *Bhullar v. Clark*, C-07-3937-SBA          1

I, Cecilia Burks, do declare and state the following:

1.      I am the Correctional Programs Secretary and Administrative Remedy Clerk employed by the Federal Bureau of Prisons ("BOP"), in the Correctional Programs Department.  I have held the Correctional Program Secretary position since November of 2001, and Administrative Remedy Clerk position since April 2006.  As part of my duties, I am familiar with the records compiled by the BOP and have access thereto.  I am trained and have access to various BOP databases, including those dealing with administrative remedies.

2.      The Administrative Remedy Program is a system by which inmates can complain about almost any aspect of their confinement. Procedural guidelines are spelled out in BOP policy, Program Statement 1330.13, Administrative Remedy Program, which is available at www.bop.gov and in all BOP inmate law libraries, and a copy of which is attached as Exhibit 1. The procedure requires that the inmate first present his complaint to the institution staff (BP-9's). The Warden of that institution then responds to the BP-9.  If dissatisfied with the response at that level, the inmate may appeal his complaint to the Regional Director (BP-10's).  The Regional Director then responds to the inmate's BP-10.  If dissatisfied with the Regional Director's response, the inmate may finally appeal to the General Counsel's Office in the Central Office of the BOP (BP-11's).  The National Inmate Appeals Administrator responds to the inmate's BP-11. An inmate has not exhausted his administrative remedies until he has filed his complaint at all three levels and has been denied at all three levels.  *See* 28 C.F.R. § 542.10 *et seq*.

3.      I have personally reviewed the Administrative Remedy logs ("logs") maintained on the SENTRY Computer system.  This is a national database which includes all administrative grievance filings made by inmates incarcerated in BOP facilities.

4.      My review of the logs shows that during her incarceration with the BOP, inmate Luz Elvia Bhullar, Register No. 16252-097, has filed three requests for administrative remedies at the institution level.  One of these requests, Administrative Remedy No. 463083, concerns her community corrections center referral.  A true and correct copy of the administrative remedy logs

for inmate Bhullar is attached as Exhibit 2.    A true and correct copy of the BP-9 request and response for Administrative Remedy No. 463083 is attached as Exhibit 3.   As Exhibit 2 does not indicate that inmate Bhullar has appealed to the BP-10 and BP-11 levels yet, she has not yet exhausted her available administrative remedy remedies regarding the issue of her community corrections center referral.

I declare under the penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this  18  day of October, 2007, at Dublin, California.


Cecilia Burks
Administrative Remedy Clerk

Declaration of Cecilia Burks
*Bhullar v. Clark*, C-07-3937-SBA                3

# Exhibit 1

Program Statement 1330.13, *Administrative Remedy Program*



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

Reformatted to renumber pages and remove CN notations from chapters 4/2/07.

| | |
|---|---|
| **OPI:** | OGC |
| **NUMBER:** | 1330.13 |
| **DATE:** | 8/13/2002 |
| **SUBJECT:** | Administrative Remedy Program |

**RULES EFFECTIVE DATE:** 8/6/2002

---

1.  [PURPOSE AND SCOPE §542.10

    **a.  Purpose.**  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement.  An inmate may not submit a Request or Appeal on behalf of another inmate.

    **b.  Scope.**  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement.  This Program does not apply to inmates confined in other non-federal facilities.]

    The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

    **[c.  Statutorily-mandated Procedures.**  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.]

2.  **PROGRAM OBJECTIVES.**  The expected results of this program are:

    **a.**  A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.

b.  Each request, including appeals, will be responded to within the time frames allowed.

c.  A record of Inmate Administrative Remedy Requests and Appeals will be maintained.

d.  Bureau policies will be more correctly interpreted and applied by staff.

3.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

PS 1330.11    Administrative Remedy Procedure for Inmates (10/29/93)

b.  **Directives Referenced**

PS 1320.05    Claims Under the Federal Tort Claims Act (6/28/00)
PS 4500.04    Trust Fund Manual (12/15/95)
PS 5212.07    Control Unit Programs (02/20/01)
PS 5214.04    HIV, Handling of Inmates Testing Positive (2/4/98)
PS 5264.06    Telephone Regulations for Inmates (12/22/95)
PS 5270.07    Inmate Discipline and Special Housing Units (12/29/87)
PS 5890.13    SENTRY-National On-Line Automated Information System (12/14/99)

28 CFR 301    Inmate Accident Compensation
28 CFR 16.10    Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c.  Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19.

4.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4236 and 3-4271

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  3-ALDF-3C-22, and 3-ALDF-3E-11

5.  [**RESPONSIBILITY §542.11**

**a.  The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program**

at the Community Corrections Center (CCC), institution, regional
and Central Office levels, respectively, and shall:

**(1)   Establish procedures for receiving, recording,
reviewing, investigating and responding to Administrative Remedy
Requests (Requests) or Appeals (Appeals) submitted by an inmate;]**

See Section 13 for further information on remedy processing,
including use of SENTRY.

**[(2)   Acknowledge receipt of a Request or Appeal by
returning a receipt to the inmate;]**

The receipt is generated via SENTRY.

**[(3)   Conduct an investigation into each Request or Appeal;**

**(4)   Respond to and sign all Requests or Appeals filed at
their levels.  At the regional level, signatory authority may be
delegated to the Deputy Regional Director.  At the Central Office
level, signatory authority may be delegated to the National
Inmate Appeals Administrator.  Signatory authority extends to
staff designated as acting in the capacities specified in this
§542.11, but may not be further delegated without the written
approval of the General Counsel.]**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term
"institution" includes Community Corrections Centers (CCCs); the
term "Warden" includes Camp Superintendents and Community
Corrections Managers (CCMs) for Requests filed by CCC inmates;
and the term "inmate" includes a former inmate who is entitled to
use this program.

(5)   The Warden shall appoint one staff member, ordinarily
above the department head level, as the Administrative Remedy
Coordinator (Coordinator) and one person to serve as
Administrative Remedy Clerk (Clerk).  The Regional Director and
the National Inmate Appeals Administrator, Office of General
Counsel, shall be advised of these appointees and any subsequent
changes.

To coordinate the regional office program, each Regional
Director shall also appoint an Administrative Remedy Coordinator
of at least the Regional Administrator level, ordinarily the
Regional Counsel, and an Administrative Remedy Clerk.  The
National Inmate Appeals Administrator, Office of General Counsel,
shall be advised of these appointees and any subsequent changes.

(6)   The Administrative Remedy Coordinator shall monitor the
program's operation at the Coordinator's location and shall
ensure that appropriate staff (e,g., Clerk, unit staff) have the

knowledge needed to operate the procedure.  The Coordinator is
responsible for signing any rejection notices and ensuring the
accuracy of SENTRY entries, e.g., abstracts, subject codes,
status codes, and dates.  The Coordinator also shall serve as the
primary point of contact for the Warden or Regional Director in
discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible
for all clerical processing of Administrative Remedies, for
accurately maintaining the SENTRY index, and for generating
SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that
inmate notices (receipts, extension notices, and receipt
disregard notices from institutions, regions and the Central
Office) are printed and delivered daily for inmates in their
units and for deleting those notices from SENTRY promptly after
delivery to the inmate.  CCMs are responsible for this function
for inmates under their supervision.

**[b.  Inmates have the responsibility to use this Program in
good faith and in an honest and straightforward manner.]**

6.  **RESERVED**

7.  **[INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution.  Except as provided in §542.13(b), an
inmate shall first present an issue of concern informally to
staff, and staff shall attempt to informally resolve the issue
before an inmate submits a Request for Administrative Remedy.
Each warden shall establish procedures to allow for the informal
resolution of inmate complaints.]**

The Warden is responsible for ensuring that effective informal
resolution procedures are in place and that good faith attempts
at informal resolution are made in an orderly and timely manner
by both inmates and staff.  These procedures may not operate to
limit inmate access to formal filing of a Request.

**[b.  Exceptions.  Inmates in CCCs are not required to attempt
informal resolution.  An informal resolution attempt is not
required prior to submission to the regional or Central Office as
provided for in §542.14(d) of this part.  An informal resolution
attempt may be waived in individual cases at the Warden or
institution Administrative Remedy Coordinator's discretion when
the inmate demonstrates an acceptable reason for bypassing
informal resolution.]**

For example, the Warden may waive informal resolution for Unit
Discipline Committee (UDC) appeals, or when informal resolution
is deemed inappropriate due to the issue's sensitivity.

P.S. 1330.13
December 22, 1995
Page 5

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement on Inmate Discipline and Special Housing Units.

8. [**INITIAL FILING**. §542.14

    a. **Submission**. **The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**]

In accord with the settlement in <u>Washington v. Reno</u>, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

[b. **Extension**. **Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**]

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required. If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request. Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was

P.S. 1330.13
December 22, 1995
Page 6

bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

[c.  **Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).]**

The following forms are appropriate:

◆  Request for Administrative Remedy, Form BP-9, is appropriate for filing at the institution;
◆  Regional Administrative Remedy Appeal, Form BP-10, is appropriate for submitting an appeal to the regional office;
◆  Central Office Administrative Remedy Appeal, Form BP-11, is appropriate for submitting an appeal to the Central Office.

**[(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.]**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**[(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page. The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.]**

The correctional counselor shall submit the form promptly (ordinarily not later than the next business day) to the Clerk for processing.

P.S. 1330.13
December 22, 1995
Page 7

[d.  <u>Exceptions to Initial Filing at Institution</u>

(1)  <u>Sensitive Issues</u>.  If the inmate reasonably believes
the issue is sensitive and the inmate's safety or well-being
would be placed in danger if the Request became known at the
institution, the inmate may submit the Request directly to the
appropriate Regional Director.  The inmate shall clearly mark
"Sensitive" upon the Request and explain, in writing, the reason
for not submitting the Request at the institution.  If the
Regional Administrative Remedy Coordinator agrees that the
Request is sensitive, the Request shall be accepted.  Otherwise,
the Request will not be accepted, and the inmate shall be advised
in writing of that determination, without a return of the
Request.  The inmate may pursue the matter by submitting an
Administrative Remedy Request locally to the Warden.  The Warden
shall allow a reasonable extension of time for such a
resubmission.

(2)  <u>DHO Appeals</u>.  DHO appeals shall be submitted initially
to the Regional Director for the region where the inmate is
currently located.]

See the Program Statement on Inmate Discipline and Special
Housing Units.

[(3)  <u>Control Unit Appeals</u>.  Appeals related to Executive
Panel Reviews of Control Unit placement shall be submitted
directly to the General Counsel.]

See the Program Statement on Control Unit Programs.

[(4)  <u>Controlled Housing Status Appeals</u>.  Appeals related to
the Regional Director's review of controlled housing status
placement may be filed directly with the General Counsel.]

See the Program Statement on Procedures for Handling HIV
Positive Inmates Who Pose Danger to Others.

9.  [<u>APPEALS</u> § 542.15

a.  <u>Submission</u>.  An inmate who is not satisfied with the
Warden's response may submit an Appeal on the appropriate form
(BP-10) to the appropriate Regional Director within 20 calendar
days of the date the Warden signed the response.  An inmate who
is not satisfied with the Regional Director's response may submit
an Appeal on the appropriate form (BP-11) to the General Counsel
within 30 calendar days of the date the Regional Director signed
the response.  When the inmate demonstrates a valid reason for
delay, these time limits may be extended.  Valid reasons for
delay include those situations described in §542.14(b) of this
part.  Appeal to the General Counsel is the final administrative
appeal.]

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office.  The deadlines have been made deliberately long to allow sufficient mail time.  Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt.  Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

[b. **Form**

(1)  **Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response.  Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses.  Appeals shall state specifically the reason for appeal.**

(2)  **An inmate may not raise in an Appeal issues not raised in the lower level filings.  An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

(3)  **An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page.  The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal).  The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).]**

c.  Processing.  The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10.  [**ASSISTANCE**  §542.16

a.  **An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or**

**Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.**

**b.  Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.]**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11.  **[RESUBMISSION §542.17**

**a.  Rejections.  The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b.  Notice.  When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection.  If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.]**

(1)  Sensitive Submissions.  Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate.  Only a rejection notice will be provided to the inmate.  However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2)  Defects.  Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.  Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3)  Criteria for Rejection.  When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise.  Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or problematic issue, such as medical treatment, sentence

P.S. 1330.13
December 22, 1995
Page 10

computation, staff misconduct, even though that submission may be somewhat untimely.

[c. **Appeal of Rejections**. When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level. The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing. The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.]

12. [**RESPONSE TIME** §542.18. If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.]

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office. Notice of extension ordinarily is made via SENTRY notice.

13. <u>REMEDY PROCESSING</u>

a. <u>Receipt</u>. Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form. Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number. The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

 A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member.  If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request.  If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b.  <u>Investigation and Response Preparation</u>.  The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation.  Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.

Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings.  Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided.  Such documents and notes shall be retained with the case file copy.  When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal.  Requested staff shall provide such statements promptly.  For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. <u>Responses</u>.  Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision.  The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn.  This abstract should be complete, but as brief as possible.  The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information.  The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act.  Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. <u>Response Time Limits</u>.  Responses shall be made as required in Section 11 of this Program Statement.

e. <u>Index Completion</u>.  When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in Attachment A.  Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter.  The abstract shall be taken from the response's first paragraph.  Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted.  For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract before the closing entry is made by the Clerk.

f. <u>Response Distribution</u>.  For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material.  Three copies shall be returned to the inmate.  An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office.  One copy shall be sent to the Warden at the original filing location.  The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate.  One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and

P.S. 1330.13
December 22, 1995
Page 13

one to the Warden's Administrative Remedy File at the original
filing location.

    g.  <u>File Maintenance</u>.  The Warden's Administrative Remedy File
and Administrative Remedy Files at the Regional Offices and
Central Office shall be maintained in a manner that assures case
files are readily accessible to respond to inquiries from Federal
Bureau of Prison staff, inmates and the public.  Institutions
shall file Regional and Central Office response copies with the
inmate's institution submission copy.  Regional offices shall
file copies of Central Office responses with the inmate's
Regional Appeal file.  Each location shall maintain copies of
supporting material and investigation notes with the case file.

    When a Regional or Central Office Appeal was not preceded by a
lower level filing, the institution and regional copies shall be
filed at the institution and region having responsibility for the
inmate at the time of response.

    To provide information and feedback, Wardens and Regional
Directors are encouraged to route response file copies from
subsequent appeal levels to the Coordinator and the appropriate
department head or person who investigated and drafted the
response at their respective levels.

**14.  [<u>ACCESS TO INDEXES AND RESPONSES</u> §542.19.  ·Inmates and
members of the public may request access to Administrative Remedy
indexes and responses, for which inmate names and Register
Numbers have been removed, as indicated below.  Each institution
shall make available its index, and the indexes of its regional
office and the Central Office.  Each regional office shall make
available its index, the indexes of all institutions in its
region, and the index of the Central Office.  The Central Office
shall make available its index and the indexes of all
institutions and regional offices.  Responses may be requested
from the location where they are maintained and must be
identified by Remedy ID number as indicated on an index.  Copies
of indexes or responses may be inspected during regular office
hours at the locations indicated above, or may be purchased in
accordance with the regular fees established for copies furnished
under the Freedom of Information Act (FOIA).]**

At present, fees are detailed in 28 CFR § 16.10, which specifies
a charge of $.10 per page duplicated and no charge for the first
100 pages.  Staff shall forward funds received for purchase of
index and response copies to the FOIA/Privacy Act Section, Office
of General Counsel, Central Office.

Any location may produce its index or that of another location by
making the appropriate entries on a SENTRY retrieval transaction,
and specifying the "SAN" (sanitized) output format.

P.S. 1330.13
December 22, 1995
Page 14

15.   <u>RECORDS MAINTENANCE AND DISPOSAL</u>

   a.   <u>Disposal Authority</u>.  The authority for Administrative
Remedy records disposal is the "job number" NC1-129-83-7 provided
by the National Archives.

   b.   <u>Administrative Remedy Indexes</u>.  SENTRY Administrative
Remedy indexes shall be maintained in computer accessible form
for 20 years, then destroyed.  Pre-SENTRY indexes shall be
maintained at the site of creation for 20 years, then destroyed.

   c.   <u>Administrative Remedy Case Files</u>.  Administrative Remedy
Case Files shall be destroyed three full years after the year in
which the cases were completed (i.e., response completed).  For
cases submitted since implementation of the SENTRY module (July
1990), at the end of each calendar year (beginning at end of
1993), run SENTRY index retrieval transactions to identify the
lowest case number for cases <u>answered</u> (status = .cl* and status
date in the appropriate range) during the calendar year ended
three years previously.  Cases below that number must be
destroyed.  Thus, cases answered in 1990 would be destroyed at
the end of 1993; cases answered in 1991 would be destroyed at the
end of 1994, etc.

   To identify the lowest case number for cases answered during a
given year, it may be necessary to check indexes with "Date
Received" in the year in question as well as those with "Date
Received" in the previous year.

   Cases maintained under the pre-SENTRY numbering and filing
system should be destroyed according to the following schedule:

| YEAR OF CASE # | DESTROY AT END OF |
|----------------|-------------------|
| 94 | 1998 |
| 95 | 1999 |
| 96 | 2000 |
| 97 | 2001 |

16.   <u>INSTITUTION SUPPLEMENT</u>.  Each Warden shall forward a copy of
any Institution Supplement developed to implement this Program
Statement to the Regional Administrative Remedy Coordinator and
to the National Inmate Appeals Administrator in the Central
Office.

                          \s\
                          Kathleen M. Hawk
                          Director

# Exhibit 2

Administrative Remedy Logs for Inmate Luz Bhullar, Reg. No. 16252-097

```
  WXRD4           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     09-12-2007
  PAGE 002 OF     *             FULL SCREEN FORMAT               *     12:19:00

  REGNO: 16252-097 NAME: BHULLAR, LUZ
  RSP OF...: DUB UNT/LOC/DST: CAMP              QTR.: S02-171L   RCV OFC: DUB
  REMEDY ID: 453323-F1      SUB1: 21AC SUB2:    DATE RCV:   05-21-2007
  UNT RCV..: CAMP          QTR RCV.: S06-073L   FACL RCV: DUB
  UNT ORG..: CAMP          QTR ORG.: S06-073L   FACL ORG: DUB
  EVT FACL.: DUB     ACC LEV:  DUB  1                   RESP DUE:  SUN  06-10-2007
  ABSTRACT.: UDC ACTION
  STATUS DT: 05-29-2007  STATUS CODE: CLO STATUS REASON: XPL
  INCRPTNO.: 1592781   RCT: N EXT:   DATE ENTD: 05-21-2007
  REMARKS..:


  REGNO: 16252-097 NAME: BHULLAR, LUZ
  RSP OF...: DUB UNT/LOC/DST: CAMP              QTR.: S02-171L   RCV OFC: DUB
  REMEDY ID: 454033-F1      SUB1: 21AC SUB2:    DATE RCV:   05-25-2007
  UNT RCV..: CAMP          QTR RCV.: S06-073L   FACL RCV: DUB
  UNT ORG..: CAMP          QTR ORG.: S06-073L   FACL ORG: DUB
  EVT FACL.: DUB     ACC LEV:  DUB  1                   RESP DUE:  THU  06-14-2007
  ABSTRACT.: UDC ACTION
  STATUS DT: 06-06-2007  STATUS CODE: CLG STATUS REASON: GRT
  INCRPTNO.: 1594882   RCT: N EXT:   DATE ENTD: 05-25-2007
  REMARKS..:
```

```
  G0002        MORE PAGES TO FOLLOW . . .
```

```
WXRD4           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      09-12-2007
PAGE 003 OF 003 *              FULL SCREEN FORMAT              *      12:19:00


REGNO: 16252-097 NAME: BHULLAR, LUZ
RSP OF...: DUB UNT/LOC/DST: CAMP                 QTR.: S02-171L   RCV OFC: DUB
REMEDY ID: 463083-F1        SUB1: 19FC SUB2:      DATE RCV:   08-10-2007
UNT RCV..: CAMP             QTR RCV.: S02-171L    FACL RCV: DUB
UNT ORG..: CAMP             QTR ORG.: S02-171L    FACL ORG: DUB
EVT FACL.: DUB      ACC LEV:  DUB  1                 RESP DUE:  THU  08-30-2007
ABSTRACT.: COMMUNITY CORRECTIONS CENTER REFERRAL
STATUS DT: 08-23-2007  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:                 RCT: N EXT:   DATE ENTD: 08-15-2007
REMARKS..:
```

```
                    3 REMEDY SUBMISSION(S) SELECTED
            TRANSACTION SUCCESSFULLY COMPLETED
```

# Exhibit 3

Administrative Remedy No. 463083 Request and Response

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | BHULLAR, LUZ E | #16252-097 | C-1 | FRC |
|-------|----------------|------------|-----|-----|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

Mr. Copenhager (warden)

First, I want to Thank you for your time and personal attention.
As I already addressed, this will be the second B-9, meaning it will
cause some delay.  I seek relief from the execution of my sentence
Pursuant to 28 U.S.C §2241, for the reason that I am in the custody
of the Bureau of Prison under circumstances in which BOP by regulation
Refuses to exercise its discretion to allow me the "full benefit" of
Six months of pre-release placement at a Community Corrections Center
In <u>violation of the Federal Law</u>, and for dening me a Admistrative
Remedy to be process breaching the inmates rights. I have filed a petition
For writ of Haveas corpus against the Mr. Chpenhager (warden) of BOP.
The petition has been filed  in the United States District Court for the
Northern District of California.  Here, the BOP chooses to not grant
More than 10 percent of an overall term of imprisonment under its pre-
Release preggam in a CCC, even though <u>Federal Law</u> allows BOP to designate
Federal inmates to CCC facilities for a period of six months. See attachments

DATE 8/7/07

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: _____

**Part C– RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|--|--|--|--|--|

SUBJECT: _____

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

BP-229(13)

The regulation issued by BOP that prevents me or others from being
Considering for release to a halfway house until he has served 90%
Of his sentence violates BOP's statutory authority.  The statue that
Authorizes BOP to place prisoners in an appropriate facility see
18 U.S.C § 3621 (b) ("the statute"), provides as follows:

        (b) Place of imprisonment- The Bureau of Prisons shall
disignate the place of the prisoner's imprisonment.  The Bureau
May designate any available penal or correctional facility that
Meets minimum standards of health and habitability established
By the Bureau, whether maintained by the Federal Government or
Otherwise and whether within or without the judicial district
In which the person was convicted, that the Bureau determines
To be appropriate and suitable, considering-

    (1) The resources of the facility contemplated;
    (2) The nature and circumstances of the offense;
    (3) The history and characteristics of the prisoner;
    (4) Any statement by the court that imposed the sentence--
    (A) Concerning the purposes for which the sentence to imprisonment
        was determined to warranted; or
    (B) recommending a type of penal of correctional facility as
        appropriate; and
    (5) Any pertinent policy statement issued by the Sentencing Commission
        Pursuant to section 994(a)(2) of title 28.

    In designating the place of imprisonment or making transfers
Under this subsection, there shall be no favoritism given to
Prisoners of high social or economic status.  The Bureau may at
Any time, having regard for the same matters, direct the transfer
Of a prisoner from one penal or correctional facility to another.
The Bureau shall make available appropriate substance abuse
Treatment for each prisoner the Bureau determines has a
Treatable condition of substance addiction or abuse.

In 2004, two circuit courts of appeals found that BOP's new
Interpretation of the statute and limitation on placement was contrary
To the plain language of the statute, which permitted BOP to transfer
A prisoner to a halfway house at any time. See Elwood v. Jeter, 386F.3d
842(8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

The statute unambiguously grants BOP authority to place prisoners in
An appropriate facility at any time, including at the outset of their
Sentence, after considering five factors  See 18 U.S.C. 3621(b);
Woodall v. Federal Bureau of Prisons. 432 F.3d at 24C.  Because the
Text of the statute is clear, no deference to BOP's interpretation of
The statute is required.  See Contract Management, Inc. v. Rumsfeld, 434
F.3d at 1146-47.  The regulation is impermissibly at odds with the
Statutory scheme because the regulation categorically limits the amount
Of time that may be spent in a halfway house and it imposes that limit
Without regard to the statutory factors that Congress mandated BOP to consider
See Woodall, 432 F.3d at 245; Levine, 455 F.3d at 80-82.  Thus, in changing
The previous policy and issuing this new regulation,  BOP misconstrued the
Underlying statute and the regulation is consequently invalid.

In issuing the regulation codified at 28 C.F.R. 570.21, BOP did not act
Consonant with Congress's intent in passing the unerlying statute, in
the 18 U.S.C. 3621(b).  Accordingly, the regulation is invalid and I
as the petitioner is entitle to be considered for release to a halfway
House prior to having served 90% of my sentence.

Remedy
Here, I as the petitioner argues that my failure to exhaust my remedies
before the Warden and Region it was on the behalf of the BOP violations
to the inmates legal rights, signed and confirmed by Mr. Kubitz that it
Will not process because it was too much trouble for the staff in a dineal
response back to me.  therefore I argue that my failure to exhaust should
Be excused also applying this to the courts.  Thus, it is unlikely BOP
Will change its position and for me to finish my administrative review
Process and it will delay the time as to October 4th 2007, in which I
Would be transferable to a halfway house, I have no other choice but,

To continue my Law Suit against the {warden} Mr. Copenhager.  This will be a violation of the statute stated above and with not acting consonant With the Congress's intent in passing the statute as of 18U.S.C 3621(b). Along with violating my administrative remedies.

Please take into consideration my five factors in order to withdraw the Law suit from the court.

My five factors:

{1} I have taken full responsablity for my actions I had self surrendered to the FBI. I have done More than 85% of my time including a 10 mos at A county main jail maximum security.

{2} I have completed all the ROPs class requirement Including my 40 hour drug program, plus extras. I have complied with all the BOP rules and regulations.

{3} I have three minor kids in which are waiting for Me.  I do also have a job waiting for me when I Get out.

{4} My goals are to work hard and safe some money so that I can get a home for my kids and get them Back on thier feet and be a better Mother and Do the right thing. No more mistakes for me.

{5} Financially I am hurt. I lost everything when I Got arrested, now I need to really work hard. and Being at the half way house will help me get right On track.  It will be very helpful for me and my Kids in getting back on our feet.

I would like to also include that I have heart problems and I am also a diabetic,  insulin dependent and high blood presure, Mr. Pang the MD Stated that I was in a big risk to get another heart attack,  I am seeking good medical attention and mainly my private Doctors.  Being at the half way house will also benefit me by seeing a heart doctor.

I thank you for yuur full attention .

Thank you.

# ADMINISTRATIVE REMEDY NO. 463083-F1 FCI DUBLIN

**BHULLAR, Luz**
Reg. No. 16252-097                                    **Part B - Response**
**Unit Camp**

This is in response to your Request for Administrative Remedy received August 10, 2007, wherein you state you were not given a six month Residential Re-entry Center (RRC) placement. For relief, you request a six month RRC placement.

On December 13, 2002, the United States Department of Justice, Office of Legal Counsel, informed the Federal Bureau of Prisons they could not place inmates in home confinement, an RRC, or a combination of the two for longer than 10% of their sentence length or a maximum of 6 months. This ruling supercedes Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures, dated December 12, 1998.

The aforementioned Program Statement further states on Page 7, Section 8c that, "A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date." Your Unit Team will make an RRC recommendation which will be forwarded to me for approval.

Therefore, based upon the above information, your request for relief is denied.

If you are dissatisfied with this response, you may file an appeal to the Regional Director, Western Regional Office, Federal Bureau of Prisons, 7950 Dublin Boulevard, 3rd Floor, Dublin, California 94568, within twenty (20) days from the date of this response.


_____                    _____
Paul Copenhaver, Warden                        Date